S. TWITCHELL COMPANY
v.
The UNITED STATES.
No. 586-53.

United States Court of Claims.
June 5, 1957.

756

Victor R. Bieber, Philadelphia, Pa., for plaintiff.

David A. Wilson, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

This suit arises under section 3250(*l*) of the 1939 Internal Revenue Code, 26 U. S.C.A. § 3250(*l*) which provides a drawback of $6 per proof gallon on fully taxpaid alcohol used in the manufacture or production of flavors or flavoring extracts which are unfit for beverage purposes. Plaintiff contends it is entitled to drawbacks for the periods January 1, 1951, to March 31, 1951, and April 1, 1951, to June 30, 1951, in the amounts of $8,443.65 and $12,717.60, respectively, plus interest.

Plaintiff filed timely claims [1] for drawbacks for both such periods with the

---

1. Plaintiff's claims to the Commissioner of Internal Revenue and its petition in this court sought the recovery of $10,136.40 as a drawback for the period January 1, 1951, to March 31, 1951, and $14,127 as a drawback for the period April 1, 1951, to June 30, 1951. At the trial of the case, however, plaintiff withdrew claims in the aggregate amount of $3,102.15 of which $1,692.75 was withdrawn from the amount claimed for the earlier period and $1,409.40 was withdrawn from the amount claimed for the latter period.

Commissioner of Internal Revenue in 1951 but both claims were denied on November 13, 1951, by the Commissioner on the ground that plaintiff had used isopropyl alcohol, also referred to as isoproponal, without the Commissioner's sanction. Isoproponal is a tax-free synthetically produced alcohol, not suitable for beverage purposes. Its use in non-beverage products will not be approved by the Commissioner because of its conduciveness to fraud. It is difficult to detect the presence of isoproponal by laboratory analysis of a sample containing it when used as a mixture with ethyl alcohol, a taxable alcohol. The Commissioner fears that if its use were sanctioned for non-beverage purposes a manufacturer could claim that taxable alcohol was included in the product in larger quantities than was actually used, since the difference in alcoholic content which would show up in the laboratory analysis would be taken up by the tax-free isoproponal. The taxable alcohol could then be diverted to other purposes.

Section 3250(*l*) provides, among other things, that for a manufacturer to claim a drawback it must comply with regulations promulgated by the Commissioner in accordance with the authority granted by that section. Those regulations specify that a manufacturer intending to claim drawbacks must first submit to the Commissioner quantitative formulae of the products for which drawbacks are to be claimed. Treas. Regs. 29 197.23(d). Such formulae must contain a description of the products and the amount of each ingredient used therein. Plaintiff, previous to the periods here in question, submitted the required quantitative formulae for the products on which it intended to claim drawbacks but did not indicate in any of them that isoproponal was to be used.

Subsequent investigation by the Bureau of Internal Revenue, however, brought out that plaintiff used isoproponal in products for which it was claiming drawbacks for the two quarterly periods immediately preceding the ones here in question. The Commissioner thereupon ordered its use discontinued but allowed plaintiff drawbacks for those periods anyway, feeling the use of the isoproponal was due to an innocent mistake on plaintiff's part. The Commissioner, however, directed that plaintiff resubmit formulae for its drawback products and plaintiff did so. The new formulae of course did not indicate that isoproponal was to be used.

In July of 1951 the Commissioner of Internal Revenue determined that plaintiff was still using isoproponal and in fact was subsequently told by plaintiff that "it was none of our [the Government's] damn business." Because of the continued use of this forbidden alcohol the Commissioner refused plaintiff drawbacks for the periods in question. Suit was thereafter brought in this court.

It should be pointed out, however, that of the $8,443.65 claimed as drawbacks for the period January 1, 1951, to March 31, 1951, $388.14 represents claim for drawbacks for products in which no isoproponal was used; and of the $12,717.60 in claimed drawbacks for the period April 1, 1951, to June 30, 1951, $5,317.80 represents claimed drawbacks for products in which no isoprononal was used.

The question we must resolve therefore, is whether plaintiff is entitled to all or part of the claimed drawbacks for the specified periods notwithstanding the fact that isoproponal was used in some of the products for which the drawbacks are claimed.

■ For a manufacturer to be entitled to drawbacks of this type it is imperative that there be compliance with the statute and regulations promulgated thereunder. The basic requirement of the combined statute and regulations is that before a drawback may be granted claimant must have filed with the Commissioner for approval a quantitative formula for each of the products for which it intends to claim drawbacks.

■ The products in which plaintiff in this case used isoproponal do not meet this requirement and, therefore, plaintiff is not entitled to drawbacks for such

products. A quantitative formula by its very nature must specify *all* the ingredients of the product and the amount of each ingredient contained therein. If one other ingredient is added, the quantitative formula submitted is not representative of the manufactured product. In some of plaintiff's products, in addition to the ingredients specified in the formulae, isproponal was added. Thus, these products did not comply with the formulae approved by the Commissioner and, hence, do not qualify for drawback relief.

Plaintiff argues that notwithstanding the fact that it used isproponal it is entitled to drawbacks. Plaintiff contends initially that the isoproponal it used was not added until *after* the manufacturing process was complete and before shipping. Such an argument is specious. It was the makeup of the end product and what went into that product that was of interest to the Commissioner. We feel that every ingredient that goes into the makeup of that end product is part of the manufacturing process. If plaintiff desired the end product to contain isproponal, as far as the Commissioner is concerned, the manufacturing process as to that product is not complete until it is included. Therefore, the isoproponal used by plaintiff in this case was not added *after* the manufacturing process was complete, it was added as part of the manufacturing process.

Second, plaintiff asserts that it is unable to find any regulation or rule of the Commissioner that expressly prohibits the addition of tax-free isoproponal at any time after the manufacture of a flavoring extract. In connection with what we said above, the isoproponal was not added *after* but· *during* the manufacturing process and in order for the product to qualify for drawbacks it must be manufactured according to the formula approved by the Commissioner. There is no regulation specifically prohibiting the use of tax-free isoproponal because, instead of compiling a long list of forbidden ingredients, the Commissioner devised a much simpler method to

regulate drawback payments, that of requiring the submission of a quantitative formula. If that formula contained forbidden ingredients the Commissioner would disapprove it and indicate why. The plaintiff then, if it still desired drawback relief as to that product, could make the necessary changes and thus qualify for the relief. This procedure eliminates the necessity of a regulation specifically prohibiting isoproponal.

Third, plaintiff asserts that section 3250 (*l*) of the 1939 Code deals with products which are unfit for beverage purposes and according to that section all the manufacturer is required to prove to be eligible for drawbacks is that fully tax-paid alcohol was used for the production of flavoring extracts *which were unfit for beverage purposes*. Plaintiff also points to section 197.24(c) (4) of Treasury Regulations 29, which follows, to prove that if the end product is unfit for beverage purposes it should be entitled to drawbacks:

> "Upon receipt by the Deputy Commissioner, the formulas will be examined and if found to be medicines, medicinal preparations, food products, flavors or flavoring extracts which are unfit for beverage purposes, they will be approved."

This contention is also without merit. It is true that for the product to be eligible it must be unfit for beverage purposes, but that is not the only requirement of the regulations. As noted above, manufacture of the product in compliance with an· approved quantitative formula is imperative. Plaintiff did not so manufacture. Among other things, the regulations also provide that data submitted in support of the claim for drawbacks must be correct. Treas. Reg. 29 197.23·(e). Such data in plaintiff's case were incorrect, since the claimed entitlement to the drawbacks was placed on formulae that did not accurately reflect the makeup of the product for which the drawbacks were claimed. Plaintiff's actions throughout the period in question indicate without doubt an attempt by it to prevent the Government

from learning that isoproponal was being used.

■ We do not feel, however, as defendant contends, that because the plaintiff did not meet the requirements of the statute and regulation on some of its products that it has forfeited its right to drawbacks on the products that did meet the requirements. The plaintiff is, therefore, entitled to judgment to the extent that the claimed drawbacks are for products that meet the requirements of the Commissioner's regulations. It is undisputed that this will amount to $388.14 for the period January 1, 1951, to March 31, 1951, and $5,317.80 for the period April 1, 1951, to June 30, 1951.

Judgment will be entered to that effect, without interest.

It is so ordered.

MADDEN, WHITAKER, and LITTLETON, Judges, concur.

LARAMORE, Judge (dissenting).

I believe plaintiff should be denied drawbacks for the periods herein claimed on the ground that it has failed to fully comply with the regulations as prescribed by the Commissioner of Internal Revenue.

Treasury Regulation 29–197.23 provides:

"*Information to be shown by the claim.* The claim must set forth, under oath, the following:

"(a)  *  *  *

"(b)  *  *  *

"(c)  *  *  *

"(d) That the nonbeverage products were manufactured in compliance with (1) quantitative formulas filed with the Commissioner on Form 1678 prior to or at the time of manufacture, or (2) formulas prescribed by the United States Pharmacopoeia, the National Formulary, or the American Institute of Homeopathy.

"(e) That the data submitted in support of the claim are correct."

The claims as filed by the plaintiff did not comply with subsections (d) and (e) of the above-quoted regulation. Subsection (d) requires that the "products" manufactured be in compliance with the formulas submitted. Some of the "products" for which plaintiff claims a drawback did in fact comply with the regulation, but I read subsection (d) as requiring that *all* of the "products" which the particular claim covers must have been manufactured in compliance with an approved formula. To hold otherwise would be to encourage the filing of false and fraudulent claims. Also subsection (e) requires that the data submitted in support of the claim be correct. I do not think that plaintiff complied with this requirement when it failed to disclose the use of isoproponal in some of the products for which a drawback was claimed.

A drawback is a privilege or benefit bestowed by the Government upon those using taxable alcohol for non-beverage purposes. As such, the right to this privilege or benefit should be construed against the applicant therefor and in favor of the Government, United States v. Walker-Hill, D.C., 79 F.Supp. 482. I would, therefore, hold that plaintiff is not entitled to recover for failure to *fully* comply with the regulations.